UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONALD P. ROSEN, individually )
and as class representative, )
 )
                Plaintiff, )
 )
  vs. )     07 C 5727
 )
MYSTERY METHOD, INC., a )
corporation, et al., )
 )
                Defendants. )

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter is before the court on Defendant Scott Donnely ("Donnely")'s motion to dismiss Plaintiff Donald Rosen ("Rosen")'s complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the following reasons, Donnely's motion is granted.

### **BACKGROUND**

On October 10, 2007, Rosen filed a two-count complaint including class claims alleging that Defendants Donnely, Mystery Method Corporation ("MMC"), Nicholas Benedict ("Benedict"), Jon Lee ("Lee"), Chris Hendricks ("Hendricks"), Peter Sergeant ("Sergeant"), and Robert Plyer ("Plyer") violated the Racketeer Influenced

and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq*. Count I alleged that Defendants violated RICO by participating in a RICO enterprise through a pattern of racketeering in violation of §§ 1962(a) and (b). Count II alleged that Defendants conspired to engage in a pattern of racketeering activity in violation of §§ 1962(c) and (d).

As we stated in *Financial, Inc. v. South Chicago Dodge, Inc.*, 2001 WL 1002463 (N.D. Ill. August 31, 2001), * 1, on a motion to dismiss a RICO claim, we must accept as true the allegations contained in both the Complaint and RICO statement (hereinafter referred to as "the Complaint"). According to those documents, Erik Von Markovick (hereinafter referred to as "Mystery") developed a sophisticated system over several years to help men meet and attract women (the "Mystery Method"). In October 2001, Mystery began offering personal training of the Mystery Method to others and a year later founded an internet site, www.mysterymethod.com (the "Website"), where he offered personal training, publications, on-line advice via private internet-based forums, audio discs, and DVDs about the Mystery Method.

On August 25, 2004, Mystery entered into an agreement with Benedict to administer the business aspects of the Website. Per the agreement, Mystery continued to personally oversee and improve the products and services offered through the

Website. In April 2005, Benedict incorporated MMC and thereafter became the sole shareholder, president, and chief operating officer. In October 2006, Mystery ended his employment and involvement with MMC and began a new website called venusianarts.com.

Rosen alleges that despite knowing that Mystery was no longer employed by MMC and no longer endorsing or approving the products sold on the Website, Defendants as well as Love Systems, Inc. ("Love Systems") and King Edward the First ("King Edward") continued to maintain that Mystery was involved with the products offered on the Website. According to Rosen, Benedict knowingly misrepresented that Mystery was involved with the products offered on the Website and used the proceeds from his misrepresentations to maintain control of MMC. Donnely allegedly participated in both the administrative activities of MMC and the training sessions offered on the Website. With regard to Lee, Hendricks, Sergeant, and Plyer, Rosen alleges that these individuals also participated in training sessions offered on the Website. The Complaint states that Defendants along with Love Systems and King Edward all formed a worldwide distribution network that advertised and distributed products and training fraudulently labeled so that they appeared to be from Mystery.

In October 2006, Rosen began receiving numerous email communications and advertisements from the Website, purporting that Mystery was actively involved with the materials offered. From November 2006 to October 2007, Rosen used his credit card to purchase an e-book and a few CDs from the Website on the mistaken belief that Mystery either created or endorsed the items he purchased and that they were the result of Mystery's most current techniques. After receiving these items via U.S. mail, Rosen spent considerable time and effort reviewing and practicing the techniques incorporated in the materials but did not receive the quality of information or benefits he expected. In July 2007, Rosen learned that Mystery was no longer associated with MMC and subsequently filed the instant Complaint in October 2007. On December 3, 2007, Donnely motioned to dismiss the Complaint pursuant to Rule 12(b)(6) and Rule 9(b).

**LEGAL STANDARD**

Rule 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe all allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pled facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Perkins v. Silverstein*, 939 F.2d

463, 466 (7th Cir. 1991). To be cognizable, the factual allegations contained within a complaint must raise a claim for relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1965 (2007). A pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

However, allegations of fraud, such as those contained in a RICO action, subject a complaint to the heightened pleading standards set forth in Rule 9(b). Rule 9(b) requires a plaintiff to plead averments of fraud with particularity. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). For purposes of particularity, the plaintiff must describe "the who, what, where, and when of the alleged fraud." *Ackerman v. Nw. Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Thus, to properly state a RICO violation, it is necessary for the plaintiff to allege the particulars concerning a cognizable injury to its business or property resulting from (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrez Co., Inc.*, 473 U.S. 479, 496 (1985).

With these principles in mind, we will consider the instant motion.

**DISCUSSION**

Donnely suggests that even when the facts alleged in the Complaint are viewed in the light most favorable to Rosen, he and the class he purports to represent cannot

recover. More specifically, Donnely contends that the Complaint fails to sufficiently allege particulars: (1) of a RICO enterprise, (2) that Defendants were involved in a RICO enterprise, (3) of the existence of any viable predicate acts, (4) of a pattern of racketeering, (5) that either Rosen or the Class has standing to sue under RICO, and (6) of a conspiracy under § 1962(d).

As a preliminary matter, we note that like the Complaint, Rosen's arguments in response to Donnely's motion to dismiss lack the legal sufficiency and substance necessary to state a RICO claim. More specifically, Rosen has failed to state the particulars of: 1) a RICO enterprise; 2) two predicate acts; 3) a pattern of racketeering; or 4) a RICO conspiracy.

*1.  RICO Enterprise*

In order to properly state a RICO violation, the plaintiff's complaint must first allege facts to demonstrate the existence of an "enterprise." *Jennings v. Emry*, 910 F.2d 1434, 1439-40 (7th Cir. 1990). The term "enterprise" is defined in 18 U.S.C. § 1961(4) as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Congress included the enterprise element in the statute to "keep the reach of RICO focused directly on traditional organized crime and comparable ongoing criminal activities carried out in a structured, organized environment."

*Sedima, S.P.R.L.*, 473 U.S. at 526. This means that for an enterprise to exist, the must be "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchal or consensual decision-making." *Jennings*, 910 F.2d at 1439-40.

The hierarchy element of an enterprise, requires that there be a "deviser," a human inventor of the fraud, who uses "its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case..." *Emry v. American General Finance, Inc.*, 134 F.3d 1321, 1325 (7th Cir. 1998). An enterprise "is something more than a group of people who get together [and agree] to commit a 'pattern of racketeering activity.'" *Jennings*, 910 F.2d at 1441.

According to Rosen, the alleged enterprise was composed of the Defendants, Love Systems, and King Edward. While we can discern from the Complaint that Defendants (excluding MMC itself) were employees or independent contractors of MMC, it is not clear what role each of them, or Love Systems or King Edward played in the alleged enterprise. The lack of clarity regarding the roles each member played in the alleged enterprise draws serious doubts that there was in fact an enterprise. This is because "the central element of an enterprise is structure." *U.S. v. Neopolitan*, 791 F.2d 489, 500 (7th Cir. 1986). For there to be an enterprise there must be "some continuity and some differentiation of the roles within it." *Richmond v. Nationwide*

*L.P.*, 52 F.3d 640, 645 (7th Cir. 1995). Simply alleging that a group of people or entities made false statements to the public via a website does not establish the structure necessary for the existence of an enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

Even a liberal reading of the Complaint does not establish the necessary particulars of: 1) who the mastermind or decision-maker of the alleged enterprise was; 2) how he "exercised control over the other members of the alleged enterprise in the same way that, for example, control would be exerted in the prototypical RICO enterprise," *Banco Del Atlantico, S.A., et al. v. Stauder*, 2005 WL 1925830, *9 (S.D. Ind. Aug. 11, 2005); or 3) what role each member of the alleged enterprise played in the hierarchy. *Sedima*, 473 U.S. at 479; *Emry,* 134 F.3d at 1325; *Richmond*, 52 F.3d at 645. Consequently, we find that the Complaint provides us with nothing more than a "nebulous, open-ended description" of a group of people and organizations that allegedly misrepresented that Mystery influenced products and services offered on the Website. *See Richmond*, 52 F.3d at 645.

Furthermore, "whether an alleged enterprise has an ascertainable structure...[depends on] whether the enterprise would still exist [if] the predicate acts were removed from the question." *See Okaye (U.S.A.), Inc. v. Denne Indus., Inc.*, 2000 WL 1727785, *4 (N.D.Ill. Nov. 20, 2000). Rosen alleges that Defendants acted

with a single purpose: to advertise and distribute products and training fraudulently labeled so that they appeared to be from Mystery. Such allegations do not suggest that Defendants had a goal different from the predicate acts of mail fraud and wire fraud. *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Such a deficiency demonstrates that if the alleged predicate acts were removed, there would be nothing left in the Complaint "to sustain the allegation of an ongoing, structured enterprise among the Defendants." *Banco Del Atlantico*, 2005 WL 1925830 at *8.

Moreover, the Seventh Circuit has directed district courts to refrain from applying RICO "to situations absurdly remote from the concerns of the statute's framers." *Fitzgerald v. Chrysler* Corp., 116 F.3d 225, 226-27 (7th Cir. 1999). One way the Seventh Circuit has recommended we make this distinction is by first measuring "how close...the family resemblance is between the prototypical [RICO] case and the case at hand." *Id.* As is apparent from our discussion above, the Complaint fails to set out the structure of the alleged enterprise. The absence of this structure, which clearly exists in the prototypical RICO enterprise, demonstrates that there is no enterprise in the instant case. Without an enterprise, there can be no RICO claim. *Jennings*, 910 F.2d at 1439-40.

*2.    Predicate Acts*

The Complaint also fails to sufficiently allege that Defendants participated in two predicate acts. In order to properly allege a RICO claim, the plaintiff must plead at least two predicate acts. The predicate acts which may form a basis for a RICO claim are set forth in 18 U.S.C. § 1961(1). Rosen alleges that Defendants committed wire fraud and mail fraud, which are both listed under § 1961(1)(B).

*A.    Copyright Infringement and Trafficking in Counterfeit Marks*

Pursuant to 17 U.S.C. § 506(a)(1), a person commits criminal copyright infringement, by willfully infringing on a copyright:

(A)   for purposes of commercial advantage or private financial gain;

(B)   by the reproduction or distribution, including by electronic means, during any 180-day period, of 1 or more copies or phone records of 1 or more copyrighted works, which have a total retail value of more than $1,000; or

(C)   by the distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, if such person knew or should have known that the work was intended for commercial distribution.

To show that another willfully infringed on a copyright requires proof that Defendants copied elements of another's original work, which had already been

validly copyrighted. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

In order to adequately allege a violation under 18 U.S.C § 2320(a), a plaintiff must state that defendants intentionally trafficked a counterfeit or spurious mark that was identical or substantially indistinguishable from a registered mark in order to cause confusion or mistake. *See also* 18 U.S.C. § 2320(e)(1)(A)(I)-(iv).

Rosen alleges that "the predicate acts alleged herein cluster around criminal copyright infringement, trafficking in certain goods bearing counterfeit marks, mail fraud and wire fraud..." Such allegations do not meet the particularity standards set out in Rule 9(b). Specifically, Rosen fails to allege: 1) that MMC does not own a valid copyright for the products and services it offers on the Website; 2) that Mystery owns a valid copyright for the products and services offered on the Website; or 3) how or why MMC's products or services are counterfeit.

Moreover, the Complaint actually supports the notion that MMC was entitled to continue using the "Mystery Method" name on its Website after Mystery left. First, the Complaint alleges that Mystery entered into an agreement with MMC to develop and sell Mystery Method products via the Website. Second, Rosen alleges that MMC remained in control of the Website after Mystery's departure from MMC. These allegations give credence to Donnely's assertion that MMC was neither

infringing on Mystery's copyright nor trafficking in counterfeit marks because they support the proposition that MMC, not Mystery, had authority over the "Mystery Method" name.

   B.   *Mail Fraud*

The Complaint fails to sufficiently allege that Defendants committed mail fraud. As the Seventh Circuit held in *U.S. v. Walker*, a mail fraud claim has three elements: "(1) the defendant's participation in a scheme to defraud; 2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." 9 F.3d 1245, 1249 (7th Cir. 1993). Like the other fraud claims mentioned already, a mail fraud claim must be alleged with particularity. Fed. R. Civ. P. 9(b). As a result, "'loose references to mailings and telephone calls' in furtherance of a purported scheme to defraud will not due. Instead, the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994).

Rosen's general allegations of the Defendants mail fraud stem from his receipt of the MMC products he ordered from the Website. Nowhere in the Complaint does Rosen state which Defendant allegedly sent the products, when they were sent, where they were sent from, or the particulars of the fraudulent conduct. Rosen's lack of

specificity with regard to his mail fraud claim demonstrates that his RICO claim is non-cognizable. Fed. R. Civ. P. 9(b).

C. *Wire Fraud*

Rosen's allegations concerning wire fraud are also deficient. Pursuant to 18 U.S.C. § 1343, wire fraud is committed by someone who 1) devises or intends to devise "a scheme...to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," and 2) "transmits or causes to be transmitted by means of wire communication...in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme..." Consistent with Rule 9(b), a plaintiff must allege the particulars concerning "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992).

While the Complaint describes the general content of the alleged misrepresentations and the manner in which they were made, it fails to meet the heightened pleading standard of Rule 9(b). The Complaint also does not give sufficient details regarding each Defendant's actual participation in the alleged wire

fraud or where it took place. Consequently, Rosen's RICO claim fails because it is based on an insufficient wire fraud claim.

### 3. *Pattern of Racketeering Activity*

In addition, the Complaint does not to sufficiently allege that Defendants participated in a pattern of racketeering activity. Rosen states that Defendants acted with a single purpose: to advertise and distribute products and training fraudulently labeled so that they appeared to be from Mystery. As we mentioned in *Greer v. Stulp*, 2002 WL 1058838, *4 (N.D.Ill. May 24, 2002), allegations of a "single fraudulent objective...even though supported by a series of similar and related acts, does not supply the requisite 'pattern of racketeering activity.'" In order to sufficiently plead a pattern of racketeering activity, one "must establish that the predicate acts are related and that they 'amount to or pose a threat of continued criminal activity.'" *Id.* Since Rosen's Complaint does not properly allege the existence of two predicate acts, his claim of a pattern of racketeering activity also fails.

### 4. *RICO Conspiracy*

Lastly, as Donnely points out, Rosen did not address the arguments Donnely raised in his motion to dismiss concerning Rosen's RICO conspiracy claim. A litigant's failure to respond to arguments the opposing party raises in a motion to dismiss operates as a waiver or forfeiture. Fed. R. Civ. P. 12(b)(6); *See Williams v.*

*Doyle*, 494 F.Supp.2d 1019, 1024 (W.D.Wis. 2007) (where court held that plaintiff forfeited his claims by failing to respond to any of defendant's arguments relating to those claims in defendant's motion to dismiss). *See also Wojitas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (where court held that failure to oppose constitutes a waiver); *See further Kirksey v. R.J.Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (where court held that plaintiff defaulted when he failed to respond to arguments raised in motion to dismiss). We therefore find that Rosen's failure to respond Donnely's motion to dismiss with regard to the RICO conspiracy issue acted as a forfeiture and waiver of this issue. Accordingly, Rosen's conspiracy claim will also be dismissed.

## CONCLUSION

For the reasons set forth above, Donnely's motion to dismiss is granted.

*Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

Dated:   March 14, 2008